UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH KLIMAS,

        Plaintiff,                                Hon. Janet T. Neff

v.                                                      Case No. 1:10-CV-666

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 51 years of age on the date his insured status expired. (Tr. 14, 113, 154). Plaintiff successfully completed high school and worked previously as a truck driver and business owner. (Tr. 18, 169, 196-201).

Plaintiff applied for benefits on August 11, 2006, alleging that he had been disabled since March 7, 2001, due to pain and impairments in his back and right lower extremity. (Tr. 113-18, 134). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 66-112). On June 2, 2009, Plaintiff appeared before ALJ Joel Fina, with testimony being offered by Plaintiff and vocational expert, Thomas Dunleavy. (Tr. 24-65). In a written decision dated June 26, 2009, the ALJ determined that Plaintiff was not disabled. (Tr. 9-19). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2002. (Tr. 14). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL HISTORY**

On August 20, 1990, Plaintiff underwent arthroscopic surgery of his right knee to perform "chondroplasty of the medial femoral condyle [and] removal of synovial plica." (Tr. 266-67).

On September 30, 1991, Plaintiff was examined by Dr. Fredric Reyelts. (Tr. 304). Examination of Plaintiff's right lower extremity revealed that it was "much smaller than the left at the distal thigh" with "a moderate amount of swelling over the [right] knee." (Tr. 304). The doctor diagnosed Plaintiff with reflex sympathetic dystrophy[1] of the right lower extremity. (Tr. 304).

On October 9, 1991, Plaintiff was examined by Dr. Mark Laughlin. (Tr. 247-48). The doctor noted that following Plaintiff's August 1990 knee surgery, he "never did have relief of the pain that he had pre-operatively, and this has continued over a year now with ongoing pain syndrome." (Tr. 247). An examination of Plaintiff's right lower extremity revealed evidence of some "muscle atrophy." (Tr. 247). Plaintiff was treated with "an epidural local anesthetic block" injection which provided "complete pain relief of the lower extremities." (Tr. 247-48).

Treatment notes dated June 3, 1992, reveal that Plaintiff's right knee was "red, warm, [and] swollen." (Tr. 305). It was further noted that Plaintiff's right knee was "very painful" when touched or moved. (Tr. 305).

---

[1] Reflex Sympathetic Dystrophy (also known as Complex Regional Pain Syndrome) is a chronic neurological syndrome characterized by severe burning pain, pathological changes in bone and skin, excessive sweating, tissue swelling, and extreme sensitivity to touch. *See* About CRPS, *available at*, http://www.rsds.org/2/what_is_rsd_crps/index.html (last visited on August 3, 2011). The "key symptom" of this disorder is "continuous, intense pain out of proportion to the severity of the injury;" moreover, there is no cure for this disorder which "gets worse rather than better over time." Complex Regional Pain Syndrome Information, *available at*, http://www.ninds.nih.gov/disorders/reflex_sympathetic_dystrophy/reflex_sympathetic_dystrophy.htm (last visited on August 3, 2011).

On June 26, 1992, Plaintiff was examined by Dr. Reyelts. (Tr. 311). Plaintiff reported that his right knee was "still bothering him quite a bit." (Tr. 311). The doctor observed that Plaintiff's knee was "swollen and tender." (Tr. 311). Plaintiff's medication regimen was modified. (Tr. 311). On August 7, 1992, Plaintiff reported to Dr. Reyelts that his right leg has "been feeling pretty good." (Tr. 312).

On April 27, 1993, Plaintiff was examined by Dr. Reyelts. (Tr. 314). Plaintiff reported that he was "doing fairly well" and "able to function fairly well." (Tr. 314). Plaintiff also reported that "he owns his own radiator shop now and is working hard w[ith] that." (Tr. 314). On June 24, 1993, Plaintiff reported to Dr. Reyelts that "he's very busy at work." (Tr. 315).

On January 14, 1994, Plaintiff reported that his current medication "controls his pain." (Tr. 316). On September 30, 1994, Plaintiff reported that his current medication "moderates his pain to some extent." (Tr. 317). On December 14, 1995, Dr. Reyelts reported that Plaintiff "is very functional, owns own business, and [is] able to keep going." (Tr. 318)

On March 1, 1996, Dr. Reyelts reported that Plaintiff is "still using a lot of Darvocet because of chronic pain from his reflex sympathetic dystrophy" in his right lower extremity. (Tr. 319). On June 13, 1996, Plaintiff reported that "when he cuts his lawn and rides in the lawn mower, it aggravates the [left] knee." (Tr. 320).

On April 1, 1997, Dr. Reyelts noted that Plaintiff's current medication regimen, specifically Darvocet, "is not helping [Plaintiff] as well now." (Tr. 322). The doctor indicated that he would continue to prescribe Darvocet for Plaintiff, but that "this will be less and less helpful for him." (Tr. 322). The doctor further noted that he "may need to consider chronic pain consult to help [Plaintiff with] this." (Tr. 322).

5

On September 23, 1997, Plaintiff reported that he was still using Darvocet, but "he needs to take more to have same effect." (Tr. 323). On March 15, 1999, Plaintiff reported that any relief he receives from taking Darvocet "is often short lived or not successful." (Tr. 324). Dr. Reyelts made the decision to switch Plaintiff to Vicodin, but noted that this "will likely only be temporary measure, and [Plaintiff] will likely develop tolerance to this as well." (Tr. 325). The doctor further noted that his "long term expectation is that this will not hold him" and that Plaintiff, "will need further management." (Tr. 325).

On November 10, 2000, Plaintiff was examined by Dr. Reyelts. (Tr. 327). The doctor noted that Plaintiff "has progressively required more narcotics" and "been through pain clinics and other therapies, antidepressants and the works." (Tr. 327). Plaintiff reported that his current medication regimen, consisting of both Darvocet and Vicodin, permits him to function, but that "it's not by any means fully controlling his symptoms." (Tr. 327). An examination of Plaintiff's right lower extremity revealed that it was "markedly tender surrounding the knee, the proximal and distal thigh." (Tr. 327).

On August 11, 2006, Plaintiff was interviewed by a representative of the Social Security Administration. (Tr. 153-56). With respect to Plaintiff's "behavior" and "degree of limitation," the interviewer reported the following:

> The claimant had a problem hearing me and I kept having to repeat things. He looks frail, and he seemed to have difficulty walking and standing. He was huntched (sic) over a little bit. He seemed to be in a lot of pain when he was signing the paperwork. He said that it was painful. He had to get up about five times during the interview and he seemed to have pain in his back.

(Tr. 156).

On June 22, 2007, Dr. Reyelts completed a report regarding Plaintiff's ability to perform physical activity. (Tr. 350-53). The doctor reported that during an eight hour work day, Plaintiff can sit for two hours, stand for 30 minutes, and walk for 40 minutes. (Tr. 350). The doctor reported that Plaintiff was not capable of "walking effectively" and required a sit/stand option. (Tr. 350). Dr. Reyelts reported that Plaintiff can "never" lift any amount of weight and has been unable to do so since 1990. (Tr. 350).

Treatment notes dated January 22, 2008, revealed that Plaintiff was "weaker [and] weaker" with "0 energy." (Tr. 388).

On February 25, 2008, Plaintiff participated in an MRI examination of his lumbosacral spine the results of which revealed the following: (1) "old partial compressions of L1 and L4;" (2) "moderate degenerative changes with disk bulging at the lower three levels;" and (3) "mild spinal stenosis at L3-4 and L4-5." (Tr. 415). There was, however, no evidence of alignment abnormality or significant compression of the neural element. (Tr. 415). X-rays of Plaintiff's right knee, taken the same day, reveal that "aside from mild degenerative changes, the knee appears normal." (Tr. 413). On February 26, 2008, Dr. Reyelts ordered for Plaintiff a walker with wheels for ambulation. (Tr. 385).

X-rays of Plaintiff's chest, taken on May 8, 2008, were "negative" with "no evidence of acute cardiopulmonary disease." (Tr. 412).

On November 10, 2008, Dr. Reyelts authored a letter in which he stated the following:

> Joe Klimas is a patient of mine and has been for some time. He has a problem with reflex sympathetic dystrophy and chronic leg pain which is resultant from an orthopedic procedure in 1990. Since that time he has had many problems with disability and is unable to sit in

>one place for more than a short period of time. I do not believe he would be able to serve [as] a juror and sit for prolonged periods without the ability to get up and move around every 30 to 40 minutes.

(Tr. 366).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffers from: (1) degenerative disc disease of the lumbar spine; (2) degenerative joint disease of both hands; (3) hypertension; and (4) reflex sympathetic dystrophy of the right lower extremity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 14). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 14-18). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can

dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[3] subject to the following limitations: (1) he can never crawl or climb ladders, ropes, or scaffolds; (2) he can occasionally stoop, kneel, crouch, and

---

be performed (20 C.F.R. 404.1520(f)).

[3] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567.  Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday."  20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

climb ramps or stairs; (3) he can frequently balance; and (4) he must avoid concentrated exposure to unprotected heights. (Tr. 16).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Thomas Dunleavy.

The vocational expert testified that there existed approximately 21,000 jobs in the State of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 49, 54-55). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). When the vocational expert was subsequently asked whether there existed work which Plaintiff could perform if he were further limited to sedentary work, the vocational expert

responded, "that sounds like a grid situation," implying that Plaintiff would be entitled to benefits in such a scenario. (Tr. 55-56).

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. In other words, a claimant may be awarded benefits if he satisfies the requirements of one of the particular rules correlating to a finding of disability. *See Russell v. Commissioner of Social Security*, 20 F. Supp.2d 1133, 1134 (W.D. Mich. 1998). The ALJ specifically found that Plaintiff possessed the following vocational factors: (1) was closely approaching advanced age; (2) was a high school graduate; and (3) that his previous work experience was skilled or semiskilled, skills not transferrable. (Tr. 19). According to the Grids, an individual possessing these particular vocational factors and limited to sedentary work would be entitled to benefits. *See* 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201.14.

a. The ALJ Failed to Properly Evaluate Dr. Reyelts' Opinion

As noted above, Dr. Reyelts reported that Plaintiff, prior to the expiration of his insured status, was impaired to an extent beyond that recognized by the ALJ's RFC determination. (Tr. 350-53). Plaintiff asserts that because Dr. Reyelts was his treating physician, the ALJ was obligated to accord controlling weight to his opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378

F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to his assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ rejected Dr. Reyelts' opinion on the ground that "it is not consistent with the medical records as a whole." (Tr. 17). The ALJ failed, however, to identify *any* medical records in support of this conclusion. The ALJ also suggested that Dr. Reyelts' opinion was inconsistent with Plaintiff's daily activities. (Tr. 17). However, the alleged activities identified by the ALJ, driving a pick-up truck, riding a lawn mower, and visiting his radiator repair shop, are not inconsistent with Dr. Reyelts' opinion that Plaintiff was limited to sedentary work. In sum, because the ALJ failed to articulate "good reasons" for rejecting Dr. Reyelts' opinion, the ALJ's decision to accord such opinion less than controlling weight is not supported by substantial evidence.


b. The ALJ's RFC Determination is not Supported by Substantial Evidence

As previously noted, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can never crawl or climb ladders, ropes, or scaffolds; (2) he can occasionally stoop, kneel, crouch, and climb ramps or stairs; (3) he can frequently balance; and (4) he must avoid concentrated exposure to unprotected heights. Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence. The undersigned agrees.

As the ALJ recognized, Plaintiff suffers from (in part) degenerative disc disease of the lumbar spine and reflex sympathetic dystrophy of the right lower extremity. The medical history

detailed above reveals that prior to the expiration of his insured status Plaintiff was experiencing significant limitations in his ability to stand and walk for prolonged periods of time. Not surprisingly, Dr. Reyelts concluded that Plaintiff was limited to work which afforded him a sit-stand option. (Tr. 350). This conclusion is well supported by the medical record. More importantly, the ALJ's decision to not include such a limitation in his RFC determination is not supported by substantial evidence. In sum, the ALJ's RFC determination is not supported by substantial evidence.

The vocational expert testified that given Plaintiff's RFC, there existed a significant number of jobs which Plaintiff could perform despite such limitations. However, the ALJ's RFC determination is not supported by substantial evidence. Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist *compelling* evidence that Plaintiff was disabled prior to the expiration of his insured status. As discussed herein, resolution of Plaintiff's claim requires the resolution of several factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The undersigned recommends, therefore, that the Commissioner's

decision be reversed and this matter remanded for further factual findings. In this respect, the Court notes that Plaintiff is not requesting that he be awarded benefits, but is instead simply requesting that the matter be remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: August 11, 2011

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge